23-6019 Ariel Schlosser v. VRHabilis LLC Argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant when ready. Good morning, your honors. My name is Bryce Fitzgerald and I'm here on behalf of the appellant for VRHabilis LLC in this matter. I would like to reserve four minutes for rebuttal. All right. We are appealing the decision of the Eastern District of Tennessee which denied our motion for judgment as a matter of law on the appellee Ariel Schlosser's claim for a hostile work environment under Title VII. We respectfully request that this court review this matter de novo and reverse the district court's decision. There was no legally sufficient basis, evidentiary basis, for a reasonable jury to find for Ms. Schlosser on her claim for four reasons. First, the district court erred by including certain discrete acts as a part of the totality of circumstances analysis which the jury had already found did not constitute unlawful discrimination under the plaintiff's discrimination claim. Second, there was no evidence that the conduct by her dive supervisor Tyler Sanders was based on her sex or sufficiently severe or pervasive. Third, there is no evidence that her co-worker Aaron Brouse, his conduct was also sufficiently severe or pervasive. And finally, your honor, the claim is barred by the Farragher-Elliott Affirmative Defense because Verabilis took prompt corrective actions to address any harassment once it became aware of it and she unreasonably failed to take advantage of those actions. The first point I want to go to, your honors, is the discrete acts. The district court erred by including certain discrete acts which were a part of her discrimination claim and those include what she calls a not test, verbal counseling, the revocation of her driving privileges and her removal from the diving rotations. When you say the court improperly permitted discrete acts, do you mean that the court improperly permitted evidence pertaining to these things to be admitted in the evidence before the jury? Is that what you're saying? No, your honor. In this case, she asserted three claims under Title VII. Discrimination claim, a hostile work environment claim and a retaliation claim. And the discrete acts that the court used in the totality of the circumstances analysis on our motion for judgment as a matter of law, those were the acts that actually constituted her discrimination claim. These are acts that did properly go to the jury. They were before the jury. The jury was entitled to look at all the evidence before it and conclude that there was a hostile work environment. It was entitled to look at all the evidence before it, but those certain acts that constituted discrimination should not have been included in the hostile work environment. You're trying to draw a line between evidence. You want to suggest that evidence, as I understand your argument, that evidence that might support a claim of discrimination on the basis of sex cannot also support the hostile work environment claim. And the evidence can be used for both. And the jury just here just found that it characterized it more as a hostile work environment. You're not trying to suggest the same evidence is not relevant to both claims, are you? Our argument is based on the Supreme Court case of National Railroad Passengers. Answer my question before you end telling me about the Supreme Court case. Absolutely. I would say that certain discrete acts cannot, the Sixth Circuit has held that certain discrete acts cannot be included in a hostile work environment claim. You said that when? In 2024, this court most recently affirmed it in the case of Obama Magruder v. Austin P. University. And that's 91-4-833. And that was on a motion to dismiss. The plaintiff alleged certain discrete acts which the court said these are different in kind and cannot properly be characterized as a part of a continuing work environment. Hostile work environment. Well, I understood your argument correctly, right? Yes, Your Honor. Yes, Your Honor. And important. I'll be surprised if I find a case that to me says that that's what our court has held. Because I can't imagine that there's any viable argument in the trial context for acts of sexual discrimination in the workplace not also to be supportive of a hostile work environment case. And with all due respect, I do know something about evidence. I have a lot of experience in the district court. So I'll be shocked if the case says what you said it did. Yes, Your Honor. And it is based on the Supreme Court National Railroad Passenger Court. I'll be shocked if the Supreme Court said it too. Where the court explained that the Title VII may bring a claim alleging that either an employer engaged in discriminatory acts such as termination, failure to promote, denial of a transfer, refusal to hire, those sort of things, or the employer's repeated conduct created a hostile work environment. And that's where this argument stems from. But it also goes further, Your Honor. In this case, the jury specifically held that we did not discriminate against her based on sex on those specific discrete acts, that it was not based on her sex. And so that goes to it too. It's almost inconsistent to find that we didn't discriminate her based on her sex here, but those somehow constitute a totality of circumstances based on a hostile work environment. Well, the jury didn't say that there was no sexual component to the hostile work environment. They didn't say that. They didn't make a finding of sex discrimination in and of itself, but in finding a hostile work environment, they didn't say that they were excluding consideration of evidence of sex discrimination. They just found what they found. Yes, Your Honor, in this one. A number of acts which a jury might find were not sexually discriminatory in and of themselves could taken as a whole with whatever evidence there is about sexual motivation could constitute a valid hostile environment claim, I believe. And isn't also your argument is kind of a requirement of consistency of verdicts in a civil case with various theories, and that's not the law either, is it generally? No, there are alternative facts, but again, I would go back to O'Bannon, Magruder v. Austin Peay State University, where the court says that you can bring either or, and the discrete acts are different in kind and should not be included in the totality of circumstances analysis. You might have a case where the acts are so different that maybe that's what the case relies on. We can read it and we can look at the facts, but here there is kind of one whole bundle of wax. The plaintiff has a variety of theories. For whatever reason, the jury ruled against them on almost all the theories, but it did find the hostile work environment was persuasive. And isn't that what juries are for? Yes, Your Honor, but we would submit that even in that, the evidentiary basis was not sufficiently severe or pervasive, or that Tyler's, the actions by Tyler Sanders or Aaron Brouse were not sufficiently severe or pervasive. The only conduct related to those two are basically that for Tyler, I'd like to first talk about Tyler Sanders. He's her dive supervisor. She made a complaint on June 17th that she was suffering daily verbal abuse from Mr. Sanders. There was nothing else related to sex at all. She claimed that he cursed her and the only specific that she actually gave is that he told her to shut the F up and that she wasn't a real diver. And all of the evidence from her testimony shows that it was related to her dive capabilities. And she must show that any such harassment, that she wouldn't be the object of such harassment but for her gender. Well, it's a list and the records seem to support that she was regularly called, at least on any number of occasions, called the B word. And that's not very favorable to your client's argument. I would agree with your honors characterization that it is not favorable in that respect and it's not a nice word to use. But you have to look at the timeline as well. She was initially on dive supervisor Sanders' team. And then June 17th, she made the complaint. Verabilis immediately investigated, shut down the dive site, switched her off that team onto another dive supervisor's team. And she actually said that all harassment stopped. Verabilis went above and beyond and she was very appreciative of what they did. That's her June 24th statement, right? That is correct, your honor. And after that, she even testified that the harassment by Sanders stopped. Then after she moved teams, about a month later, she has three separate isolated incidents with her coworker, Aaron Brouse. Those related to two of which occurred on one day, July 19th, and another which occurred on a week to 10 days later. And he did use the B word in those, which is unfavorable. But I don't think you can extract that onto something earlier by a different individual. And furthermore, your honor, we would argue that the fair girl with the firm of defense that she repeatedly refused to take advantage of our corrective opportunities. Once she complained about Tyler Sanders, the HR manager emailed her repeatedly with no response and sent her text messages asking for additional information and a time to set up to talk. But she never ever got back to her until she sent that June 24th email saying that everything was resolved. With respect to Mr. Brouse, she never complained. It was resolved at that point in time, but there were subsequent events. And even though there came a time when her direct supervisor was removed or she was no longer reporting, there's the allegation that he subsequently continued to dabble in the management of her as an employee. The dive supervisor dabbled in her management? I can't remember the name, but. Tyler Sanders. Yes. That's incorrect, your honor. And if you actually look at what they submitted in their appendix where he ranked the divers, that was after she was already, it was in response to an email where she was already removed from the dive rotation based on delays and her perceived diving capabilities. Well, the problem is that all these contested facts were presented to the jury and we don't necessarily want to, as the motive and the quantum of evidence and what evidence was credible and not, and we don't want to take over the function of the jury. So if the argument is that the evidence was insufficient to support the verdict, it has to be pretty clear that that's the case before we would disturb the verdict, don't you think? I would agree with you, your honor. And again, I would go back to the discreet acts versus non-discreet acts, the continued harassment. And once you take out those discreet acts, which the jury held was not discrimination, which I would submit to the court. I'm not following this dichotomy between discreet acts and non-discreet acts. What do you mean by that? One example is her removal from the dive rotation. So she claims as part of discrimination she was removed from the dive rotation, which made her result in a lower pay. That's a specific discreet act that should be included in a discrimination claim but not a hostile work environment claim. Can't the removal from the rotation be part of the hostile environment? We're hostile to you, therefore we're going to remove you? I don't think that under the Sixth Circuit's precedent that it can, your honor. Okay, we'll take a look. I'll take a look at that. I see that I'm out of time. I'll reserve any points for rebuttal unless your honors have any further questions at this point. All right. Thank you very much. Thank you, your honors. Good morning, your honors. Good morning. Brandon Hall on behalf of Plaintiff Ariel Schlosser. I would initially like to address Mr. Fisher. So we can at least see his face. Are you not here? Judge Givens is making a good point here as to whether you would like not to be behind the podium so that the panel would have a better view. Whatever. It's up to you, but if you do have that option. Well, if you're comfortable with it, I'd rather be able to see all your face rather than part of it. I would first like to address Mr. Fitzgerald's argument on specifically with National R&R, Court v. Morgan and the discrete acts as opposed to the continuous acts. There was a brief part in that case on pages 114 and 115 in which Justice Thomas was discussing discrete acts versus continuous acts, but that was in reference to, on the one hand, gender discrimination and whether claims were timely filed under the EEOC's 300-day window. But Justice Thomas went further on the next page on page 116 and clearly stated that with the hostile work environment analysis, that it's all continuous acts. And so you're not looking at the difference between discrete and continuous acts. And so for that purpose, I believe National R&R supports our argument that it was the continuous acts that led to the hostile work environment. And additionally, in Harris v. Forklift Systems, Williams v. General Motors, both cases talk about the totality of the circumstances and that you look at all actors and you look at all circumstances. Even circumstances that may not be facially sexual can still be part of this gender-based hostile work environment if there are gender-based circumstances, circumstantial evidence there. And in this case, we certainly have that. As Mr. Fitzgerald mentioned, we have the initial harassment by Tyler Sanders in which he dressed her down pretty good. I will not repeat the language in here, but basically told her that she's not a real diver. She just needs to shut up and let the real divers do their job. His harassment did not end there, as you mentioned, Judge Clay, because later on during the employment, after she had been switched off of his team, he was integral in having her removed from the dive rotation again. And when he was asked to rate the divers, he listed her as last, even though he was no longer her dive supervisor and could not personally see her dives. And so he had no idea. Bigos, the second supervisor, did he ever do a ranking? Not that I'm aware of, no. But as it pertains to Bigos, I'm glad you mentioned him, though, because during the verbal assaults by Mr. Browse against Ms. Schlosser, those all occurred right in front of Mr. Bigos, and Mr. Bigos did nothing to intervene. And so all of the acts, whether Mr. Fitzgerald wants to clarify them as discrete acts or not, all of the acts that occurred either took place by a supervisor, were witnessed by a supervisor, or were enforced by upper management for Verabilis. As for what he alleges are discrete acts, I find that kind of interesting, because those are the ones that actually have valid comparator information that clearly shows that Ms. Schlosser was subjected to one set of terms and privileges of employment, but the males were subjected to completely different terms and privileges of employment. If Ms. Schlosser got the vehicle stuck one time, she had her driving privileges revoked. If males did it with impunity, never had their driving privileges revoked. They claim she got stuck in the MRS, which there is no record to support that whatsoever, but there is a record that a male got the vehicle stuck in the MRS, but they never had their driving privileges revoked. Ms. Schlosser was the only one that had her diving privileges revoked. Meanwhile, male divers who made the same mistakes that she made, or male divers that performed worse than she did, were allowed to continue diving. She was the only one who was ever prohibited from diving. As for the driving, as the brief shows, it wasn't simply a matter of her not being able to drive to the store and get a piece of gum or anything like that. We're talking about her inability to actually go to the bathroom without them having to shut the job site down. Once again, she's going to be the problem child if she has to say, hey guys, I'm going to shut it down so somebody can drive me to the bathroom. It wasn't simply just her wanting to go to the bathroom, it had drastic impacts on her. As for Erin Brouse, you are correct. The terminology that he used, he did call her the B word. He also called her the slimy B word. I think the more egregious aspect of it was the threatening nature of his outburst. Ms. Schlosser testified that he was red in the face. He told her, you want an enemy, you've got one. I'll make your life a living hell. They'll fire you before they fire me. Now, if that is not intimidation, I don't know what is. Go ahead, Judge Box, I'm sorry. No, you go ahead. My question is peripheral. We'll get to it. Okay. As for the claim that Ms. Schlosser failed to follow up with human resources or report the other incidents, as an initial matter, when Ms. Bacchus, the human resource for Veravalis, she kind of speaks out of both sides of her mouth a little bit on that aspect of it because she says that she wasn't able to investigate her allegations because Ms. Schlosser never did provide her with any additional information. But at the time that she was asking Ms. Schlosser for the additional information is also the same time that Mr. Adler was allegedly on site investigating the same exact claims in which Ms. Schlosser did talk to Mr. Adler. And then, yes, she did send the email because initially she thought that they did make the transfer to benefit her. But then she subsequently realized that it was actually to appease Mr. Sanders. And this goes back to their argument with the Farragher-Ellerith. Case after case after case after Farragher-Ellerith says that one of the options is to transfer the harasser, not the victim. But that's what they did in this case. They transferred the victim. And they ended up moving Sanders from the general house to everybody else's management house. He came out pretty good on that one. As for not reporting incidents to human resources later, Ms. Schlosser, it was the... These acts were not occurring in silos. It's a very small area that these workers are close together on. And, I mean, typically within a couple of arm's reach of each other you can hear everything, you can see everything. It was the worst kept secret on there that she was getting harassed and berated all the time. And supervisors weren't doing anything about it. So if human resources turned their nose up at her the first time and supervisors sitting there ignoring the acts happening right in front of them, right in front of them, and they still can't even stop it, why does she think that somebody is going to do anything to help her out then? She just wanted to keep her nose to the grind and finish the contract out, but unfortunately she didn't get to do that. Counsel, my question, and this may be peripheral, I'm not sure, is you had a variety of claims. The jury worked hard at it, took a few days, and they came back basically negative on all the claims except hostile environment and specifically said no front pay, no compensatory damages, no nominal damages, no punitive damages. So did you have a theory as to how the front pay, I'm sorry, the back pay would amount to $58,000? Well, I think the way they, I'm not sure how they arrived at that number either. Were you trial counsel? Yes, I was, yes. Because I tried to look at the argument and I didn't see much numbers in that argument. Right, because it was, she was on a, the Cape Polk project was a, ultimately, approximately a six month contract. It's a little up in the air when it finally ended, but she had been there for ten weeks, and so they must have, the jury must have calculated her back pay on what she would have earned had she worked that contract all the way through. Wouldn't that be front pay, counsel? I mean, you didn't bring a constructive discharge claim. She resigned, right? We did assert constructive discharge. But they didn't agree with that either? Honestly, I've been racking, and I know we can't do that, we can't question why jury rules the way they do. That may be the answer. I was just curious as to your thoughts on it as trial counsel. Yes, I was dumbfounded. I thought for sure we had gender discrimination on that one. I'm not sure what sidetracked them. I'll take the blame myself on that one. Well, you'll take what you can get, though. You got a judgment.  Is it possible that they, wasn't there some discrepancy between the pay if you died and the pay if you didn't die? Is it possible they took that into the calculation? I don't know what the numbers were, but I want, I mean. That doesn't get you anywhere near enough on the discrepancy. Well, I suspect that's true. Judge Gibbons, I'm glad you mentioned that because I did suspect that, that it was because the calculations that I had if she completed the contract out were different than what the jury awarded. And so I didn't know if they went in there and they started looking at, okay, if she'd been given the equal amount of dimes throughout the entire time, and honestly, I really don't know. Well, it seems like, didn't these jurors deliberate for several days? I'm sorry? Didn't these jurors deliberate for a while? Yes, they did, yes. Well, we'll never know what compromises and discussions were had. I do have one question. Mr. Fitzgerald mentioned an Austin Peay case, which he said, Austin Peay being, I think, the defendant, I can't remember the plaintiff's name, which he said is a recent decision of our court. Do you have a comment on that case? Well, I did read that case, and for one, it's factually different in quite a few ways. But on that one, as I understood the court's opinion on that, as Mr. Fitzgerald mentioned, that was at the 12B6 stage. And so according to the opinion on that from what I read is the complaint never alleged that the hostile work environment was based on her race. And so it was just factually, the complaint was factually insufficient on that aspect of it. And then the four, as far as the discrete acts that they're referring to, there were apparently four acts, but they occurred over a four to five year time period, and the court said that that just simply, the timing on that simply does not work out to equate severe and pervasive environment. Anything further? No, not unless your honors have questions for me. Apparently not. Thank you for your argument. Thank you, your honor. We'll hear rebuttal. Thank you. Thank you, your honors. May it please the court. I would like to first address one thing he said with respect to Tyler Sanders affecting her diving when he ranked them after she was moved off his team. If you'll look at the appellee's appendix on appendix page 85, you'll see that... By the way, excuse me for interrupting, was she the only woman on that team? She was, your honor. If you look at that email, on July 24th, the project manager Ron Madden sent out an email where he said he didn't want Ms. Schlosser diving based on delays, he's one of the most productive divers in the water. It was after he had already sent that email, removing her from the dive rotation, that Mr. Sanders sent out his email ranking. So it did not affect the decision for her to be removed from the diving rotation. The other thing that I'd like to address is that Mr. Hall mentioned that the supervisors witnessed and didn't do anything. On the second incident with Mr. Browse, it occurred on one day, July 19th, one earlier in the day, one later, Mr. Browse actually complained to Paul Burrell, the site manager. He went and asked both for a statement. She completely refused. She never complained about Browse. Mr. Burrell even tried to put her off the team with Mr. Browse, separate them, and she pleaded with him not to. If any of those things were severe or pervasive, then she would probably have taken one of those steps. You know, all these factual matters that you're reviewing for us, did you present or have an opportunity to present all these items of evidence to the jury? Yes, Your Honor, we did. That's kind of like a repetition of what might have been some of your closing argument to the jury here. Yes, Your Honor, and I will go ahead and close them right now. So if you have any further questions, I'd be happy to take them. Seems that we don't. Thank you, Your Honors. I think we have your argument in hand. Thank you. The case is submitted.